**DYNASTY, INC., a Colorado corporation, Counterclaim–Defendant and Plaintiff–Appellee,**

v.

**WINTER PARK ASSOCIATES, INC., a Colorado corporation, Counterclaimant–Crossclaimant and Defendant–Appellant.**

No. 99CA1068.

Colorado Court of Appeals, Div. V.

June 22, 2000.

Brown, Berardini & Dunning, P.C., Neal K. Dunning, Denver, Colorado, for Counterclaim–Defendant and Plaintiff–Appellee.

Baker & Hostetler, LLP, James M. King, Denver, Colorado, for Counterclaimant–Crossclaimant and Defendant–Appellant.

Opinion by Judge RULAND.

Defendant, Winter Park Associates, Inc., appeals from the judgment determining that plaintiff, Dynasty, Inc., holds title to certain real property. We affirm.

In 1876, a town-site patent was issued to Central City by the United States. The plat included an area designated as Block 42. However, the patent expressly excepted from the conveyance lands contained within either federally patented mining claims or lands known to have valuable mineral claims.

Later, Uranium Company of America (UCA) acquired title to both the surface rights and the mineral rights to the lots and mining claims located within Block 42. In 1955, UCA conveyed the various claims to General American Industries, Inc. (GMA). As pertinent here, the 1955 deed provided that: "It is also the intention [of the grantor] to exclude from this Deed any Central City lots to a depth of twenty (20) feet, whether or not they are specifically named herein." This surface reservation was not referenced

or repeated in subsequent deeds from GMA and its successor.

After GMA's successors in interest failed to pay assessed taxes during various years, tax sales were conducted and treasurer's deeds ultimately were issued. The language in the deeds purports to convey both the surface estate and the mineral estate. Plaintiff acquired its claim to title of all of the disputed property based upon the treasurer's deeds as the initial source of title.

Later, plaintiff filed this quiet title action pursuant to C.R.C.P. 105 to determine ownership of eight contiguous parcels in Block 42. Defendant answered and claimed an interest in the surface area of parts of four patented mining claims located partly within Block 42 and designated as the Ellieth, Leavitt, Otonagon, and Vulcan claims. Defendant also claimed an interest in lot 11 of Block 42. Defendant alleged that, as the successor to UCA's interests, it had acquired the top 20 feet of surface to lot 11 and to the areas where the mining claims overlapped the other city lots. Defendant did not dispute plaintiff's title to the remaining area in Block 42.

After a hearing, the trial court made extensive findings and conclusions and determined that title should be awarded to plaintiff. This appeal followed.

■ Since the relevant facts are undisputed and the pertinent documents are in the record before us, we are not bound by the trial court's conclusions, and we must resolve the issues by analyzing the applicable law. *See Atchison, Topeka & Santa Fe Ry. Co. v. North Colorado Springs Land & Improvement Co.,* 659 P.2d 702 (Colo.App.1982).

Resolution of the issues requires us to apply § 38–41–111(1), C.R.S.1999, which provides that:

No action shall be commenced or maintained *against a person in possession* of real property to question or attack the validity of or to set aside, upon any ground or for any reason whatsoever any ... instrument of conveyance, deed, certificate of sale ... executed by any ... county treasurer ... when such document is the source of ... the title or chain of title or right of the party in possession or any of

his predecessors or grantors ... if such document has been recorded and has remained of record in the office of the county clerk and recorder ... for a period of seven years .... (emphasis supplied)

It is undisputed that plaintiff was in possession of Block 42 at the time the complaint was filed, and that the deed had been of record for well in excess of the statutory period. Nor is there any claim of improper notice in regard to any of the various tax sale proceedings that occurred prior to issuance of the treasurer's deeds. *See Bald Eagle Mining & Refining Co. v. Brunton,* 165 Colo. 28, 437 P.2d 59 (1968).

Nevertheless, defendant contends that the trial court erred in determining that § 38–41–111 prevents it from challenging the treasurer's deeds. According to defendant, it seeks only to determine the nature of the property interest actually conveyed by the treasurer's deeds and not to attack the validity of the instruments. Also, based upon its argument that the deeds conveyed only the mineral estate in the disputed parcels, defendant claims ownership of the surface. However, we agree with the trial court's ruling.

Defendant's argument is based upon two theories. First, relying upon cases such as *Mitchell v. Espinosa,* 125 Colo. 267, 243 P.2d 412 (1952), defendant argues that the surface estate, not having been separately assessed by the county assessor, was not included in the treasurer's deed. Second, relying upon cases such as *Webermeier v. Pace,* 193 Colo. 157, 563 P.2d 950 (1977), defendant asserts that plaintiff could acquire only the title of the taxpayer at the time via the treasurer's deeds and that this ownership was restricted to the mineral estate. We are not persuaded by these contentions.

In *Mitchell,* our supreme court addressed the situation in which "oil rights" had been reserved in a conveyance before the issuance of a treasurer's deed for nonpayment of taxes. The court held that the treasurer's deed did not convey that previously severed mineral interest. The court stated:

It is clear that before a valid tax deed can be issued by a county treasurer for nonpayment of taxes there must have been a valid assessment of the property subject-

ing it to the payment of taxes followed by a default in the payment thereof. . . . *Where a separate and distinct estate consisting of mines, minerals and quarries . . . is created by reservation thereof, a sufficient description of this property for assessment purposes requires specific reference to the severed estate.* Thus, there must be in the assessment a sufficient description of the estate in oil, such as 'all oil and gas beneath and underlying' the specific . . . land. A valid assessment is a prerequisite to the issuance of a valid treasurer's deed. (emphasis supplied)

*Mitchell v. Espinosa, supra,* 125 Colo. at 276, 243 P.2d at 416. *See also Gilpin Investment Co. v. Perigo Mines Co.,* 161 Colo. 252, 421 P.2d 477 (1966)(certificate for unpaid taxes and treasurer's deed referred to surface estate only and thus previously reserved mineral rights were not included in conveyance).

▉ Here, the 1955 deed created a separate and distinct estate in the minerals by reserving the surface. As a result, for there to be a valid assessment of the mineral estate, *Mitchell* requires that those rights had to be sufficiently described in a separate assessment. However, the parties agree and the trial court found that separate assessments were not prepared for either the minerals or the surface estate after the severance in the 1955 deed. Hence, in our view *Mitchell* does not provide legal support for defendant's contention.

In *Webermeier,* our supreme court again held that a tax assessment must sufficiently describe the mineral estate once that estate has been severed. The *Webermeier* court also confirmed that possession of the surface was not deemed to be possession of the severed mineral estate and that, therefore, limitation statutes addressing ownership based upon possession did not apply. *See also Kriss v. Mineral Rights, Inc.,* 911 P.2d 711 (Colo.App.1996)(possession of the surface estate does not constitute possession of the mineral estate under § 38–41–111). The court then held that a party can acquire title via a treasurer's deed to no more than the taxpayer owned.

As a result, because only the interest in coal deposits was owned by the taxpayer in *Webermeier,* the other mineral interests were not included in the treasurer's deed.

*See also Denver Trackage & Improvement Co. v. Colorado & Southern Ry. Co.,* 58 Colo. 313, 145 P. 707 (1915)(property conveyed by treasurer's deed is limited to property included within the legal description).

Here, however, the issue is limited to ownership of the surface estate and not a prior reserved mineral estate. Further, neither the mineral estate nor the surface estate was separately assessed after the reservation. Conversely, if defendant were correct in its interpretation of *Mitchell* and *Webermeier,* the treasurer's deeds could not be deemed to convey either the surface estate or the mineral estate because of the reservation in the 1955 deed and the fact that separate assessments were not prepared for either estate. We view that result as absurd and not consistent with the purpose and intent of § 38–41–111(1).

Finally, like the trial court, we accord no particular significance to the fact that the name of the taxpayer appears in the treasurer's deed to lot 11. Defendant uses this designation to argue that the treasurer's conveyance was intended to be of the mineral estate only. However, not all of the treasurer's deeds for the other parcels include the taxpayer's name and none of the deeds contains language of limitation as to the estate conveyed.

Turning then to the correct application of § 38–41–111, we note that plaintiff's possession of the surface estate is undisputed. Hence, based upon the express language of the statute, we hold that title to the surface estate is in plaintiff because the required statutory period has expired following issuance of a treasurer's deed that purports to convey the entire surface estate. Accordingly, the trial court was correct in awarding plaintiff a decree of title.

By reason of our disposition of this issue, it is unnecessary to address defendant's other contentions for reversal of the judgment.

Judgment affirmed.

Judge CASEBOLT and Judge VOGT concur.