2015 COA 83

**BATTLE NORTH, LLC,**
Petitioner–Appellee,

v.

**SENSIBLE HOUSING COMPANY,**
Respondent–Appellant.

**Court of Appeals No. 14CA0665**

Colorado Court of Appeals,
Div. II.

Announced June 18, 2015

Rehearing Denied July 23, 2015

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2014.

Eagle County District Court No. 12CV330, Honorable Mark D. Thompson, Judge

Hamil/Martin LLC, Michael G. Martin, Denver, Colorado, for Petitioner–Appellee

The Law Offices of Theodore W. Brin, Theodore W. Brin, Denver, Colorado, for Respondent–Appellant

Opinion by JUDGE J. JONES

¶ 1 Respondent, Sensible Housing Company (Sensible), appeals the district court's order determining that a stock certificate and two quitclaim deeds are spurious documents under sections 38–35–201(3) and –204, C.R.S. 2014. We conclude that because the stock certificate was "filed" only as an exhibit in a court proceeding and does not affect petitioner Battle North, LLC's real property, it is not a spurious document within the meaning of the applicable statutes. But we also conclude that the quitclaim deeds, which Sensible recorded in Eagle County, are. Therefore, we affirm the order in part and reverse the order in part. We also remand the case to the district court for a determination of Battle North's reasonable appellate attorney fees incurred in defending the judgment as to the quitclaim deeds.

## I. Background

¶ 2 This case concerns a dispute over ownership of real property in Eagle County which the parties and the courts have referred to as the Pine Martin parcel. The history of that dispute is rather complicated.[1] It essentially began, at least from a litigation perspective, in 1998, when Mortgage Investment Corporation (MIC) filed for judicial foreclosure on a deed of trust encumbering the Pine Martin parcel and another piece of real property referred to as the Piney Lumber parcel. The foreclosure complaint named numerous defendants that might claim ownership of the parcels, including, as relevant in this case, Pine Martin Mining Company (PMMC) and Piney Lumber Company (PLC). PMMC and PLC answered, claiming ownership of the Pine Martin parcel and the Piney Lumber parcel, respectively. They asserted counterclaims and cross-claims alleging fee ownership of the parcels and sought declarations that they are the fee owners of the parcels. The 1998 foreclosure case thus morphed into a quiet title action,

and we will refer to it as such as we discuss the issues raised in this appeal.

¶ 3 In 2000, PMMC and PLC moved for partial summary judgment on their quiet title claims in the quiet title action. MIC filed a cross-motion for partial summary judgment. In 2004, while the cross-motions for summary judgment remained pending, MIC assigned its interest in the matter to Ginn Battle Lender, LLC (Ginn), and Ginn was substituted as a party. PMMC and PLC purported to transfer their interests in the parcels to Sensible by quitclaim deeds, which Sensible recorded in the Eagle County Clerk and Recorder's Office. (Sensible was then substituted for PMMC and PLC.) Two of those quitclaim deeds, one recorded in 2006 and the other recorded in 2008, were from PMMC to Sensible and concerned the Pine Martin parcel. They are the quitclaim deeds at issue in this case.

¶ 4 The parties in the quiet title action stipulated to a procedure to resolve the case. The court adopted the stipulation. In the course of identifying and briefing the outstanding issues in the quiet title action, Sensible filed as an exhibit with the district court a purported 1915 Stock Certificate certifying that 1,251,000 shares of the capital stock of PMMC had been issued to Charles Bouvier. Sensible's principal, Jeff Tucker, claimed that he had obtained the shares represented by the 1915 Stock Certificate from Mr. Bouvier's heir in 1996. Claiming authority to act on PMMC's behalf by virtue of that transfer, Mr. Tucker created and recorded, or caused to be created and recorded, the 2006 and 2008 quitclaim deeds to Sensible.

¶ 5 In 2009, the district court granted Ginn's cross-motion for summary judgment and denied Sensible's motion for partial summary judgment. The court struck Sensible's pleadings, concluding that the 1915 Stock Certificate and other documents purporting to convey the stock represented by that certificate first to Mr. Tucker and then to a

---

1. The history of disputes over the Pine Martin parcel is recounted in several Colorado appellate court decisions, including: *Town of Minturn v. Sensible Hous. Co.*, 2012 CO 23, 273 P.3d 1154, *rev'g*, 280 P.3d 36 (Colo.App.2010); *Mortg. Invs. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176 (Colo.2003), *rev'g*, 56 P.3d 1104 (Colo.App.2001);

*Ginn Battle Lender, LLC v. Sensible Hous. Co.*, (Colo.App. Nos. 10CA0114 & 10CA2158, 2011 WL 1590536, Apr. 21, 2011) (not published pursuant to C.A.R. 35(f)); *Mortg. Invs. Corp. v. Battle Mountain Corp.*, 93 P.3d 557 (Colo.App.2003); and *Turkey Creek Ltd. Liab. Co. v. Anglo Am. Consol. Corp.*, 43 P.3d 701 (Colo.App.2001).

newly-formed PMMC were incredible as a matter of law, and therefore Sensible had no interest in either parcel.

¶ 6 Sensible appealed. A division of this court affirmed the summary judgment as to the Piney Lumber parcel, but reversed the summary judgment as to the Pine Martin parcel. *Ginn Battle Lender, LLC v. Sensible Hous. Co.,* (Colo.App. Nos. 10CA0114 & 10CA2158, 2011 WL 1590536, Apr. 21, 2011) (not published pursuant to C.A.R. 35(f)). With respect to the Pine Martin parcel, the division concluded that, contrary to the district court's ruling, the 1915 Stock Certificate, through which Sensible purported to derive its ownership interest, was not "so incredible that no reasonable jury could believe it." Accordingly, the division remanded the case "for further proceedings as to that parcel."

¶ 7 Apparently, nothing of consequence has happened in the quiet title action since. But on April 6, 2012, Battle North filed a petition for an order to show cause pursuant to section 38–35–204 and C.R.C.P. 105.1, instituting this case, and alleging that the 1915 Stock Certificate is a spurious document. The petition sought an order directing Sensible to show cause why the 1915 Stock Certificate should not be declared invalid, and an order following a hearing declaring the stock certificate to be invalid. Battle North subsequently filed an amended petition alleging that the two quitclaim deeds also are spurious documents, which the court should declare invalid. The district court conducted an evidentiary hearing on the amended petition. It then issued a detailed written order with findings of fact and conclusions of law. As now most relevant, the court found:

- Mr. Tucker created the 1915 Stock Certificate;

- Mr. Tucker's testimony as to the "recreation of the 1915 Stock Certificate" was "unconvincing and wholly incredible";

- "[T]he 1915 Stock Certificate is a sham and not a genuine copy of anything";

- Sensible filed the 1915 Stock Certificate in Eagle County District Court on July 21, 2008, as an exhibit to a brief;

- The quitclaim deeds were recorded in the Eagle County Clerk and Recorder's office in 2006 and 2008;

- Mr. Tucker claimed to have derived his authority to act on behalf of the newly-created PMMC (incorporated by Mr. Tucker in South Dakota in 1996) in creating and recording the quitclaim deeds from the purported 1915 Stock Certificate;

- Mr. Tucker did not have any authority to act on behalf of the original PMMC, and, consequently lacked authority to execute and record the quitclaim deeds;

- The quitclaim deeds "are not what they purport to be, to wit, legitimate quitclaim deeds executed by [PMMC]";

- After the original PMMC failed to pay taxes on the property, the Pine Martin parcel was sold at a tax sale and treasurer's deeds for that parcel were issued to new owners in 1932;

- Battle North's claim of title derives from those treasurer's deeds;

- Battle North owns the Pine Martin parcel; and

- Battle North is in possession of the Pine Martin parcel.

¶ 8 Based on these findings (and others), the court concluded that the 1915 Stock Certificate and the quitclaim deeds are spurious documents. The court declared the 1915 Stock Certificate and the quitclaim deeds invalid and "released" them. The court also awarded Battle Mountain attorney fees and costs pursuant to section 38–35–204(2).

## II. Discussion

¶ 9 Sensible raises a host of issues on appeal. Some challenge the district court's decision to act on the petition and amended petition and others challenge the legal merits of the court's ruling. Sensible does not appear to challenge any of the district court's underlying findings of fact. We first address Sensible's challenges to the district court's decision to act, reject those challenges, and then address its challenges to the legal merits of the district court's determinations that the 1915 Stock Certificate and quitclaim

deeds are spurious documents within the meaning of sections 38–35–201(3) and –204.

## A. This Action Is Not Barred by the Priority Rule

¶ 10 The priority rule holds that "[w]here two courts may exercise jurisdiction over the same parties and subject matter, ... the first action filed has priority of jurisdiction, and ... the second action must be stayed until the first is finally determined." *Town of Minturn v. Sensible Hous. Co.*, 2012 CO 23, ¶ 19, 273 P.3d 1154. "The purpose of the priority rule is to promote judicial efficiency and 'avoid unnecessary duplication and multiplicity of suits.'" *Id.* (quoting in part *Pub. Serv. Co. of Colo. v. Miller*, 135 Colo. 575, 577, 313 P.2d 998, 999 (1957)).

¶ 11 Sensible argues that the priority rule required the district court to stay this case pending resolution of the quiet title action.

¶ 12 The district court rejected that argument because (1) "neither the parties or the subject matter is identical" and (2) staying the case would be contrary to the intent of section 38–35–204 and C.R.C.P. 105.1 to provide "a swift resolution to a discrete issue." We conclude that the priority rule does not apply in these circumstances, though our reasoning differs somewhat from the district court's. *See Newflower Mkt., Inc. v. Cook*, 229 P.3d 1058, 1061 (Colo.App.2010) ("If the trial court reached the correct result, we may affirm its determination on different grounds.").

### 1. Preservation and Standard of Review

■ ¶ 13 Battle North argues that Sensible did not preserve this issue for appellate review because it did not move to consolidate the two cases or move for a stay of this case. The record shows, however, that Sensible repeatedly raised the priority rule and requested a stay. There is some ambiguity in the record whether Sensible requested a stay only as to the quitclaim deeds, but the district court construed Sensible's requests for a stay as applying to the entire case and ruled on the issue with that understanding. We therefore regard the issue as preserved. *See Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 23, —— P.3d ——

(where issue was brought to the district court's attention and the court ruled on it, it was preserved for appellate review; no talismanic language is required to preserve an issue).

¶ 14 Case law is not clear as to the standard of appellate review of an order denying a stay requested pursuant to the priority rule. The supreme court has used mandatory language in characterizing the district court's obligation to stay the second proceeding. *See,* e.g., *Town of Minturn*, ¶ 19 ("the second action *must* be stayed" (emphasis added)); *Wiltgen v. Berg*, 164 Colo. 139, 145, 435 P.2d 378, 381 (1967) (same). But in the same context the supreme court has approved of certain considerations "that may serve the trial court in the exercise of its discretion in granting or denying a stay." *Town of Minturn*, ¶ 19; see also *Nationwide Mut. Ins. Co. v. Mayer*, 833 P.2d 60, 62 (Colo.App.1992) (addressing such considerations where cases are pending in two different states; cited with approval in *Town of Minturn*, ¶ 19).

■ ¶ 15 The priority rule derives from the inherent power of courts to stay proceedings before them. *See Town of Minturn*, ¶ 18. That power is commonly understood as discretionary. *See In re Marriage of Fleet*, 701 P.2d 1245, 1247 (Colo.App.1985).

¶ 16 Our determination of the appropriate standard of review is also informed by the purposes of the priority rule, which, as noted, are "to promote judicial efficiency and 'avoid unnecessary duplication and multiplicity of suits.'" *Town of Minturn*, ¶ 19 (quoting in part *Pub. Serv. Co. of Colo.*, 135 Colo. at 577, 313 P.2d at 999); *see Estates in Eagle Ridge, LLLP v. Valley Bank & Trust*, 141 P.3d 838, 844 (Colo. App. 2005). Not every situation in which courts have concurrent jurisdiction will implicate these policy concerns. *See,* e.g., *Estates in Eagle Ridge*, 141 P.3d at 844–45. Perhaps that is why the supreme court has directed a district court considering whether to stay a case because of the priority rule to take into account "expense and convenience, availability of witnesses, the stage to which proceedings in the first action have already progressed, and the possibility of prejudice

resulting from the stay." *Town of Minturn*, ¶ 19.

■ ¶ 17 In light of all this, we conclude that the decision whether to grant a stay pursuant to the priority rule is committed to the district court's discretion.[2] Consequently, we review such a decision for an abuse of that discretion. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapprehension of the law. *Sinclair Transp. Co. v. Sandberg*, 2014 COA 75M, ¶ 26, 350 P.3d 915.

### 2. Analysis

■ ¶ 18 Sensible contends initially that the district court applied an incorrect standard—requiring that the parties and subject matter be "identical." We need not address the extent to which the parties and subject matter in the two actions must be identical because the district court's order is correct for two independent reasons: (1) C.R.C.P. 105.1 allowed Battle North to bring the petition in a separate action; and (2) staying this case would not further the policies animating the priority rule.

¶ 19 We begin by looking at the content and structure of section 38–35–204. That statute provides that

> [a]ny person whose real or personal property is affected by a recorded or filed lien or document that the person believes is a spurious lien or spurious document may petition the district court in the county or city and county in which the lien or document was recorded .... for an order to show cause why the lien or document should not be declared invalid....

§ 38–35–204(1). The statute then provides an expedited procedure whereby the court issues an order to show cause to the respondent (the entity which recorded or filed the allegedly spurious lien or document); the respondent responds to the order to show cause; an evidentiary hearing is conducted; and the court determines whether the lien or document is spurious, and, if called for, imposes remedies. § 38–35–204(1)–(3).

■ ¶ 20 The purpose of the act containing section 38–35–204 is "to protect individuals from those who use groundless claims to cloud title to real property as a form of protest or harassment." *Westar Holdings P'ship v. Reece*, 991 P.2d 328, 331 (Colo.App. 1999). The General Assembly's express requirement of an expedited process clearly indicates that it intended these matters to be resolved relatively quickly, unabated by the procedures governing ordinary civil actions and the delays inherent in applying those procedures. *See Fiscus v. Liberty Mtg. Corp.*, 2014 COA 79, ¶ 31, ―― P.3d ―― (observing that "[t]he simplicity and expedited time frame of [these] proceedings contrasts with the more complex and protracted proceedings under the general civil rules") (*cert. granted* Apr. 6, 2015).

¶ 21 Promptly after the enactment of section 38–35–204, the supreme court adopted C.R.C.P. 105.1, which governs the procedure for spurious document petitions. It largely tracks section 38–35–24, but it does more. As relevant in this case, after repeating the statute's language that a petition may be filed in the county in which the spurious document was recorded or filed, it says that "[t]he petition ... *may also* be brought as a counterclaim or a cross-claim in a pending action...." C.R.C.P. 105.1(a) (emphasis added).

■■ ¶ 22 Therefore, a party desiring to challenge the validity of a recorded or filed lien or document has a choice: the party "may" file the petition as a counterclaim or cross-claim, or the party may institute a separate proceeding. *See Cont'l Cas Co. v. Rio Grande Fuel Co.*, 108 Colo. 472, 476–77, 119 P.2d 618, 619–20 (1941) (statute providing that a party "may" commence an action against a surety on a contractor's bond was permissive, and did not bar an action on the bond itself).[3] So, to the extent the priority

---

2. We would reach the same result on the merits of the priority rule issue were we to review it de novo.

3. To be sure, "may" will be construed as "must" or "shall" if the context indicates an intent that it be so construed. *See, e.g., Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106, 1113 (Colo.1990). But nothing in C.R.C.P. 105.1 indicates that

246

rule might otherwise be implicated by the commencement of a separate action, C.R.C.P. 105.1 creates an exception to the rule.

¶ 23 The second reason the district court ruled correctly is that the policy reasons animating the priority rule—concerns about judicial efficiency and unnecessary duplication of effort—are not implicated under the circumstances.

¶ 24 When Battle North filed its petition, the quiet title action had been dormant for some time; no action had been taken in the case since the remand from the court of appeals. It remained essentially moribund throughout the proceedings in this case. And though the quiet title action had been pending for many years, it had not progressed very far. Sensible's counsel said during a hearing in this proceeding in May 2012 that "very little discovery" had been conducted in the quiet title action. No trial date had been set. Further, had this case been stayed, and the matter somehow transferred to the quiet title action, there likely would have been additional delay in determining the spurious document claims (though the same expedited procedure mandated by section 38–35–204 would have applied in the quiet title action). As the district court pointed out, staying this action pending resolution of the quiet title action would have thwarted the General Assembly's intent to provide an expedited process for determining the validity of allegedly spurious liens and documents.

¶ 25 For these reasons, we conclude that the district court did not err in determining that the priority rule does not apply.

### B. The Filing of the Petition Did Not Contravene the Court of Appeals' Mandate

¶ 26 Sensible also contends that allowing Battle North to litigate this proceeding contravenes the mandate of this court in an earlier appeal of the quiet title action. We are not convinced.

"may" as used in subsection (a) must be interpreted as "must" or "shall" to fulfill the rule's purpose.

¶ 27 The division in the prior appeal of the quiet title action remanded for "further proceedings" as to the Pine Martin parcel. Nothing about that remand order precluded Battle North from proceeding as allowed by section 38–35–204 and C.R.C.P. 105.1. And by so doing, Battle North did not impair the court's ability to resolve the quiet title issues in the quiet title action. Accordingly, proceeding in this action was not inconsistent with the remand order in the quiet title action. *See Musgrave v. Indus. Claim Appeals Office*, 762 P.2d 686, 688 (Colo.App.1988) (A general remand for further proceedings consistent with the appellate court's decision "authorizes the trial court to make new findings and conclusions so long as there is no conflict with the ruling of the appellate court.").[4]

### C. The 1915 Stock Certificate Is Not a Spurious Document

¶ 28 Sensible contends that its use of the 1915 Stock Certificate as an exhibit in the quiet title action did not entitle Battle North to relief under section 38–35–204 because filing a document as an exhibit in a civil case does not qualify as recording or filing the document within the meaning of the statute. We agree with Sensible's contention.

#### 1. Standard of Review

¶ 29 Sensible's contention requires us to construe the meaning of sections 38–35–201(3) and –204. We review issues of statutory construction de novo. *Sperry v. Field*, 205 P.3d 365, 367 (Colo.2009); *Barnhart v. Am. Furniture Warehouse Co.*, 2013 COA 158, ¶ 13, 338 P.3d 1027.

#### 2. Analysis

¶ 30 In interpreting a statute, we strive to discern and give effect to the General Assembly's intent. *Hassler v. Account Brokers of Larimer Cnty., Inc.*, 2012 CO 24, ¶ 15, 274 P.3d 547; *Krol v. CF & I Steel*, 2013 COA 32,

4. We reject Battle North's argument that Sensible failed to preserve this contention for review for the same reason we rejected its similar argument concerning Sensible's priority rule contention.

¶ 15, 307 P.3d 1116. To do this, we first look to the statutory language, giving the words and phrases used in the statute their plain and ordinary meanings. *Hassler*, ¶ 15; *Krol*, ¶ 15. We read the language in the dual contexts of the statute as a whole and the comprehensive statutory scheme, giving consistent, harmonious, and sensible effect to all of the statute's language. *Jefferson Cnty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo.2010); *BP Am. Prod. Co. v. Patterson*, 185 P.3d 811, 813 (Colo.2008). After doing this, if we conclude that the statute is not ambiguous, we enforce it as written and do not resort to other rules of statutory construction. *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo.2011); *Krol*, ¶ 15. We are also mindful, however, that the General Assembly's intent must prevail over a literal meaning of the statute which would lead to an absurd result. *Henisse v. First Transit, Inc.*, 247 P.3d 577, 579 (Colo.2011); *Barnhart*, ¶ 14.

¶ 31 Section 38–35–201(3) defines a "spurious document" as "any document that is forged or groundless, contains a material misstatement or false claim, or is otherwise patently invalid." If such a document is "recorded or filed," and "affect[s]" a person's "real or personal property," that person may bring an action under section 38–35–204. *See* § 38–35–204(1).

¶ 32 Sensible's challenge to the district court's ruling that the 1915 Stock Certificate is a spurious document turns on the meaning of "recorded or filed" in section 38–35–204(1). The statute does not say what "recorded or filed" means. Battle North argues that the phrase is broad, necessarily including the filing of a document with any "state or local official or employee," which includes a district court clerk who receives documents for filing in civil court actions. It reasons that section 38–35–204(1) does not contain any language limiting "recorded or filed," and section 38–35–201(6) defines "[s]tate or local official or employee" as including any "employee" of "any branch of state government." Though the district court agreed with Battle North, we do not.

¶ 33 Contrary to Battle North's reading of the statute, it does contain limiting language. The recording or filing at issue must be one that affects a person's real or personal property. See § 38–35204(1) ("Any person whose real or personal property is affected by a recorded or filed lien or document" may file a petition.). The filing of an exhibit in a civil court action does not affect a person's real property. Such an exhibit is nothing more than evidence relating to the parties' legal positions. To be sure, consideration of such an exhibit (and other evidence) may ultimately lead to a ruling that, if recorded or filed in certain records, may affect a person's real property, but there is no indication in the statute that such an attenuated and contingent effect is what the General Assembly had in mind when it enacted the statute.[5]

¶ 34 Indeed, to read the statute as broadly as Battle North advocates would lead to absurd results. Court disputes over real property almost always require the consideration of documents used as exhibits allegedly supporting or relating to title. Battle North's proposed interpretation would encourage spurious document litigation based on such documents almost as a matter of course.

¶ 35 Battle North's reliance on the statutory definition of "[s]tate or local official or employee" is similarly unpersuasive. As Sensible points out, if that term applies to a court clerk responsible for accepting filings in civil court cases, section 38–35–202(1), C.R.S.2014, would give such a clerk the authority to reject a document that the clerk "reasonably believes in good faith may be a spurious ... document." Battle North's reading of "recorded or filed" would thus lead to the absurd result of allowing court clerks to reject exhibits or other documents relevant to civil litigants' claims.

¶ 36 We also note that the primary remedy provided by section 38–35–204 is plainly inapplicable to documents filed as exhibits in civil court cases. Section 38–35–204(2) provides that if a court determines that a document is spurious, the court shall

---

**5.** We observe that both Battle North's and Sensible's title experts agreed that the 1915 Stock

Certificate did not have any effect on Battle North's purported title.

"declar[e] the ... spurious document ... invalid, releasing the recorded or filed ... spurious document...." A court cannot "release" an exhibit or document filed in a civil court case because the filing of the material does not attach it to anyone's property.

¶ 37 Thus, considered in context, and in light of the consequences resulting from the district court's construction of "recorded or filed," we think it reasonably clear that the General Assembly did not intend that phrase to encompass documents filed merely as exhibits in civil cases.

¶ 38 In any event, any ambiguity in the phrase is resolved, at least for present purposes, by legislative history. *See Jordan v. Panorama Orthopedics & Spine Ctr., P.C.,* 2015 CO 24, ¶ 14, 346 P.3d 1035 (if a statute is ambiguous, the court may consider legislative history); *see also* § 2–4–203(1)(c), C.R.S. 2014 (same). As noted, that history shows that "the purpose of the [spurious lien statutes] was to protect individuals from those who use groundless claims to cloud title to real property as a form of protest or harassment." *Westar Holdings,* 991 P.2d at 331. Further, it appears evident that the General Assembly intended to cover not merely liens or documents that can be "recorded," such as documents recorded in the property records of county clerks and recorders, but also documents that can be "filed" with another public agency or official in a way that may affect a person's property. An example of the latter is the Secretary of State's office, which accepts filings of certain liens relating to real property. *See* §§ 4–9.7–103(3), 4–9.7–105, 4–9.7–106, C.R.S.2014.

¶ 39 We conclude, in short, that the General Assembly intended to address liens and documents filed against real and personal property. *See Shyanne Props., LLC v. Torp,* 210 P.3d 490, 492 (Colo.App.2009) ("The supreme court adopted C.R.C.P. 105.1(d) [relating to hearings on spurious document petitions] as a procedural mechanism for challenging the validity of a spurious lien or other document filed against real property."). An exhibit filed in a civil case is not filed against real property: it does not cloud title or otherwise have a legal effect on real property.

¶ 40 Based on the foregoing, though we do not disturb the district court's factual finding that the 1915 Stock Certificate is a "sham," we further conclude that the district court erred in ruling that the filing of the 1915 Stock Certificate as an exhibit in the quiet title action rendered it a spurious document. That portion of the district court's order so ruling is reversed.

### D. The Quitclaim Deeds Are Spurious Documents

¶ 41 The district court ruled that the 2006 and 2008 quitclaim deeds which the newly-created PMMC had given to Sensible, and which Sensible had recorded in the county real property records, are spurious documents. Sensible's opening brief does not expressly address that ruling; Sensible challenges it for the first in its reply brief. We could affirm that ruling for this reason alone. *Saint John's Church in the Wilderness v. Scott,* 2012 COA 72, ¶ 9 n.3, 296 P.3d 273 ("[W]e will not consider arguments raised for the first time in a reply brief."); *IBC Denver II, LLC v. City of Wheat Ridge,* 183 P.3d 714, 718 (Colo.App.2008) (same).

¶ 42 Nonetheless, because certain of Sensible's arguments purport to challenge the court's subject matter jurisdiction to determine the validity of the quitclaim deeds, and its argument on the merits could be construed as having been subsumed in its arguments relating to the 1915 Stock Certificate, we will address Sensible's argument pertaining to the quitclaim deeds. We conclude that all of those arguments fail.

### 1. Subject Matter Jurisdiction

¶ 43 Sensible contends in its reply brief, in rather conclusory fashion, that the district court "did not have subject matter jurisdiction to decide the validity of the [1915] Stock Certificate because it was never 'filed' for the purpose of" section 38–35–204, and hence, if we conclude that the 1915 Stock Certificate is not a spurious document, we must reverse as to the quitclaim deeds, presumably because the district court would have lacked jurisdiction to decide their validi-

ty. This contention misperceives the nature of subject matter jurisdiction.

¶ 44 "Subject matter jurisdiction concerns the court's authority to deal with the class of cases in which it renders judgment." *Protest of McKenna*, 2015 CO 23, ¶ 16, 346 P.3d 35 (internal quotation marks omitted); *accord Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist.*, 734 P.2d 627, 636 (Colo.1987). Section 38–35–204 plainly gives district courts the authority to decide the validity of allegedly spurious liens and documents. § 38–35–204(1). The existence of that authority does not depend on any ultimate ruling that the allegedly spurious lien or document is invalid. Indeed, the statute requires a court to enter an order declaring a lien or document not spurious if it so determines. See § 38–35–204(5). Doing so would not be permissible if such a determination deprived the court of jurisdiction. Thus, Sensible's jurisdictional contention fails.

## 2. The Amended Order to Show Cause Encompassed the Quitclaim Deeds

¶ 45 As noted, Battle North's original petition alleged only that the 1915 Stock Certificate was a spurious document. The district court issued an order to show cause based on that petition. Sensible contends that because that order to show cause was limited to the 1915 Stock Certificate, the court had no authority to determine the validity of the quitclaim deeds.

### a. Preservation

¶ 46 In responding to the court's amended order to show cause (discussed below), Sensible asserted that because no order to show cause had been issued as to the quitclaim deeds, their validity was not at issue. But Sensible did not thereafter make this argument in the district court. Its trial brief did not mention the matter, nor did Sensible's counsel mention the matter during the hearing on the order to show cause or in closing argument after the hearing. In fact, Sensible acted as if the validity of the quitclaim deeds was at issue. Sensible included the quitclaim deeds in its list of exhibits and did not object when Battle North did the same. Sensible's counsel stipulated to the admission of the quitclaim deeds at the hearing, did not object to Battle North's questioning of Mr. Tucker about the quitclaim deeds, and questioned Battle North's expert about the legal effect of the quitclaim deeds.

¶ 47 Under these circumstances, we could conclude that Sensible abandoned the issue, so it is not preserved for our review. *See JW Constr. Co. v. Elliott*, 253 P.3d 1265, 1271 (Colo.App.2011) ("The identification of an affirmative defense in an answer and trial management order, without more, fails to preserve a matter for appellate review."); *Borquez v. Robert C. Ozer, P.C.*, 923 P.2d 166, 171 (Colo.App.1995) ("[I]ssues presented in the pleadings but not presented at trial will not serve as a basis of appellate review."), *aff'd in part, rev'd in part on other grounds*, 940 P.2d 371 (Colo.1997).

¶ 48 But the issue arguably pertains to the district court's subject matter jurisdiction, an issue which may be raised at any time, including on appeal. *See Pueblo W. Metro. Dist. v. So. Colo. Water Conservancy Dist.*, 717 P.2d 955, 957 (Colo.1986). This is so because a court's jurisdiction to decide the validity of a document is invoked by filing a petition under section 38–35–204(1), and Sensible contends that the court's jurisdiction was accordingly limited to deciding the validity of the document challenged in the petition. Therefore, we will address this contention.

### b. Merits

¶ 49 Sensible's contention ignores the course of events following the court's issuance of its initial order to show cause.

¶ 50 Battle North filed an amended petition for an order to show cause, expressly alleging that because the quitclaim deeds were "entirely derivative of the 1915 Stock Certificate," they too were "spurious documents ... and should be declared invalid." Thereafter, and before Sensible filed any response to the order to show cause, the court held a status conference. The minute order summarizing the discussions at the status conference does not indicate that Sensible's counsel objected to the amended petition. A

few days later, the court issued an amended order to show cause directing Sensible to respond to Battle North's petition.

¶ 51 In our view, the court's amended order pertained to Battle North's then operative pleading—the amended petition to show cause. As discussed, Sensible proceeded at the hearing as if that was the case. And the court said in its order declaring the documents spurious that "[t]he Amended Petition added two quitclaim deeds as documents, both of which Battle North contends are spurious. The parties proceeded to hearing based upon the allegations set forth in the Amended Petition." Thus, we conclude that the quitclaim deeds were encompassed within the district court's amended order to show cause. The court therefore had statutory authority to determine the validity of those documents.

### 3. The Quitclaim Deeds Affect Battle North's Real Property

¶ 52 In its reply brief, Sensible argues that the quitclaim deeds are not spurious because (1) a quitclaim deed can convey only such title or interest as the grantor had and (2) the district court determined that the newly-created PMMC had no title or interest to convey. Accordingly, Sensible asserts that Battle North's property could not have been affected by the recording of the quitclaim deeds. This argument is entirely without merit.

#### a. Standard of Review

¶ 53 Sensible's contention depends on the legal effect of documents. It therefore presents a question of law that we review de novo. See Nat'l State Bank of Boulder. v. Burns, 525 P.2d 504, 506 (Colo.App. 1974) (not published pursuant to C.A.R. 35(f)); see generally Am. Water Dev., Inc. v. City of Alamosa, 874 P.2d 352 (Colo.1994).

#### b. Analysis

¶ 54 In effect, Sensible argues that unless a document is a valid lien or encumbrance against real property, it cannot be a spurious document because it cannot affect the real property. But if a lien or document creates a valid lien or encumbrance, it is not

a spurious document. As noted, a spurious document is "any document that is forged or groundless, contains a material statement or false claim, or is otherwise patently invalid." § 38–35–201(3). This definition obviously may encompass a document that purports to convey an interest in property but does not do so because the grantor has no interest to convey.

¶ 55 In Pierce v. Francis, 194 P.3d 505, 508 (Colo.App.2008), a division of this court held that a notice of lis pendens can be a spurious document as defined by section 38–35–201(3). Accord Shyanne Props., 210 P.3d at 491; see also Westar Holdings P'ship, 991 P.2d at 330. A notice of lis pendens is nothing more than a notice that litigation involving title to real property is pending. See Hewitt v. Rice, 154 P.3d 408, 412 (Colo.2007). Ultimately, it may be determined that the party who filed the notice of lis pendens does not have any interest in the property. But, even if that is the outcome, the notice creates a cloud on title, rendering title unmarketable. Id. at 412–13; Pierce, 194 P.3d at 508.

¶ 56 Likewise, a quitclaim deed gives notice that the grantee claims an interest in the property. Whether valid or not, it thus creates a cloud on title. See Nielson v. Benton, 903 P.2d 1049, 1052 (Alaska 1995) ("A cloud on title is an outstanding claim or incumbrance which, if valid, would affect or impair the title of the owner of a particular estate.... To be a cloud on title the claim need not be valid, it need only be colorable until removed by a quiet title action." (internal quotation marks and citations omitted)); Gambino v. Boulevard Mortg. Corp., 398 Ill. App.3d 21, 337 Ill.Dec. 257, 922 N.E.2d 380, 410 (2009) ("A cloud on title is the semblance of title, either legal or equitable, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce."); Essex Crane Rental Corp. v. Carter, 371 S.W.3d 366, 388 (Tex.App.2012) ("A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." (internal quotation marks omitted)); Robinson v. Khan, 89 Wash.App. 418, 948 P.2d 1347, 1349 (1998)

("'A cloud upon a title is but an apparent defect in it.'" (quoting *Whitney v. City of Port Huron*, 88 Mich. 268, 50 N.W. 316, 317 (1891))). Several courts have regarded quitclaim deeds as creating a cloud on title. *See, e.g., Ridgeway v. Lewis*, 203 Ark. 1063, 160 S.W.2d 50, 51–52 (1942); *Joseph v. Duran*, 436 So.2d 316, 316–17 (Fla.Dist.Ct.App.1983); *Pierson v. Davidson*, 252 Mich. 319, 233 N.W. 329, 330–31 (1930).

¶ 57 In this case, the cloud on title is particularly obvious given that the purported grantor of the quitclaim deeds, an entity referred to in the deeds as Pine Martin Mining Company, appears early on in the record chain of title of the Pine Martin parcel. Any potential purchaser of the property would have notice of—and likely be deterred by—the claims represented by these quitclaim deeds.

¶ 58 We therefore conclude that the district court did not err in finding that the quitclaim deeds are spurious documents. As clouds on title they obviously affect Battle North's property.[6] And the district court's underlying findings, which are supported by the record, and which Sensible does not contest, support the conclusion that the quitclaim deeds are "groundless" and contain "false claim[s]." See § 38–35–201(3). Those findings include that the 1915 Stock Certificate (which Mr. Tucker created and from which he purported to derive his authority) was a "sham and not a genuine copy of anything," and that Mr. Tucker had no authority to execute and record the quitclaim deeds.

### E. Battle North's Title Is Not Invalid

¶ 59 Sensible argued in the district court that Battle North is not a "person whose real ... property is affected by" the 1915 Stock Certificate and quitclaim deeds, as required by section 38–35–204(1), because it does not own the Pine Martin parcel. On appeal, Sensible contends that the district court erred in rejecting that argument. We are not persuaded.

6. To be clear, we do not hold that a document must cloud title to be one that affects property within the meaning of section 38–35–204(1). We

### 1. Standard of Review

¶ 60 The parties disagree as to the appropriate standard of appellate review. Sensible argues that we should review the district court's ruling de novo, while Battle North argues that we should review the ruling for clear error. Under the circumstances presented, we agree with Sensible.

¶ 61 Sensible's challenge to the district court's ruling is based on its contention that two 1932 treasurer's deeds in Battle North's chain of title are invalid. It argues that one such deed contains an insufficient legal description of the property conveyed, and that the other was ineffective because the United States had record title to the property when the treasurer's deed was issued. These contentions are based only on consideration of documents and the law of conveyances. The district court did not make any credibility determinations relevant to these contentions, nor did the court weigh conflicting evidence. Because we are in as good a position as the district court to determine the legal effect of the relevant documents, we review de novo. *See Colo. River Water Conservation Dist. v. Mun. Subdistrict*, 198 Colo. 352, 355, 610 P.2d 81, 83 (1979); *Bolser v. Bd. of Comm'rs*, 100 P.3d 51, 53 (Colo.App.2004); *Dynasty, Inc. v. Winter Park Assocs., Inc.*, 5 P.3d 392, 393 (Colo.App.2000).

### 2. Analysis

¶ 62 The 1932 treasurer's deeds were issued as a result of the original PMMC's failure to pay taxes on a larger tract of property containing the Pine Martin parcel. One refers to the Bolt and Brooklyn Placer parcel and the other refers to the River Bend Mill site. Because Sensible's more specific contentions as to these two deeds differ, we address them separately.

#### a. The Bolt/Brooklyn Placer Treasurer's Deed

¶ 63 The legal description in the Bolt/Brooklyn Placer treasurer's deed described the property conveyed as follows:

hold that a document that clouds title affects property within the meaning of the statute.

A part of the Brooklyn placer, U.S. Survey No. 19500, containing one and one-half acres, also a strip of land along the eastern side of the F.S. Bolt Homestead of H.E.S. No. 41, containing 2.93 acres situate in the County of Eagle, State of Colorado....

The deed also said that the two parcels were "contiguous." Relying on a number of cases, Sensible argues that this legal description was insufficient to identify the property conveyed, and therefore the deed was void. *See, e.g., Smith v. Highland Mary Mining, Milling & Power Co.,* 82 Colo. 288, 290, 259 P. 1025, 1026 (1927); *Webber v. Wannemaker,* 39 Colo. 425, 428, 89 P. 780, 781 (1907); *Adelson v. Bd. of Cnty. Comm'rs,* 875 P.2d 1387 (Colo.App.1993).

¶ 64 The district court rejected this argument for two reasons. First, the court ruled that Sensible's argument is barred by section 38–41–111, C.R.S.2014, which provides, in relevant part, that no one may challenge the title of one in possession of real property based on the alleged invalidity of any deed (including a treasurer's deed) in the chain of title more than seven years after the deed was recorded.

¶ 65 Second, the district court determined that the description was sufficient because the deeds by which PMMC had obtained the parcels mentioned in the Bolt/Brooklyn Placer treasurer's deed described those parcels by metes and bounds. In so determining, the court relied on the principle that a property description in a treasurer's deed is sufficient if "the description of real property sold for taxes is such that thereby it can be identified, either with or without extrinsic evidence, and does not mislead the owner." *Seymour v. Deisher,* 33 Colo. 349, 351–52, 80 P. 1038, 1039 (1905) (quoted with approval in *Lake Canal Reservoir Co. v. Beethe,* 227 P.3d 882, 891 (Colo.2010)); *see also Harrison v. Everett,* 135 Colo. 55, 60, 308 P.2d 216, 219 (1957) ("If the description in a deed identifies, *or furnishes the means of identifying,* the property conveyed, it performs its function." (emphasis added)). The court also noted the current trend in the law toward affirming the validity of tax titles. *See Lake Canal Reservoir Co.,* 227 P.3d at 891–92.

¶ 66 We reject Sensible's challenges to both rulings.

¶ 67 Sensible argues that section 38–41–111 does not apply because "[t]he issue in this case was what property, if any, Battle North acquired by virtue of the Treasurer's deed, not whether the deed was valid." But Sensible's argument that Battle North does not own the Pine Martin parcel is based expressly on its assertion that the Bolt/Brooklyn Placer treasurer's deed is invalid.[7] Thus, by its plain terms, section 38–41–111 applies to Sensible's argument. *See Bald Eagle Mining & Refining Co. v. Brunton,* 165 Colo. 28, 32, 437 P.2d 59, 61 (1968) (noting that the predecessor statute to section 38–41–111 "makes a title acquired by tax deed virtually invulnerable to attack after it has been of record seven years"); *see also Dynasty, Inc.,* 5 P.3d at 393–94 (rejecting a virtually identical argument); *Joseph v. Joseph,* 43 Colo.App. 533, 534–35, 608 P.2d 839, 840 (1980). Because the deed at issue was recorded on November 12, 1932, Sensible's challenge was more than seventy years too late.

¶ 68 Sensible's argument as to the legal description fares no better. Sensible argues that the legal description was insufficient as a matter of law because it conveyed only a part of a larger tract. But that argument ignores the holding of *Seymour,* which our supreme court relatively recently approved in *Lake Canal Reservoir Co.,* that such a description is sufficient if the property can be identified by extrinsic evidence and the owner is not misled. Sensible does not challenge the district court's determination that the deeds from which the Bolt/Brooklyn Placer treasurer's deed was derived, which are in the record chain of title, described the property by metes and bounds. Nor does Sensible assert that the grantee of the Bolt/Brooklyn Placer treasurer's deed, or anyone else for that matter, was misled by the legal description.

¶ 69 Sensible's reliance on *Smith,* which dealt with a grant of a portion of larger tracts, is misplaced because in that case

---

7. Sensible never contested that Battle North is in actual possession of the Pine Martin parcel.

there was apparently no contention that the property was identifiable by reference to extrinsic evidence.

¶ 70 We therefore conclude that the district court did not err in rejecting Sensible's challenge to Battle North's ownership based on the alleged invalidity of the Bolt/Brooklyn Placer treasurer's deed.

b. The River Bend Mill Treasurer's Deed

¶ 71 Sensible argues that the River Bend Mill treasurer's deed, which was recorded three days after the Bolt/Brooklyn Placer treasurer's deed, is void because when the treasurer issued it, the United States had record title to the parcel. Sensible bases this argument on the fact that the 1920 Patent from the United States conveying the parcel to the original PMMC was not recorded until 1993. The district court rejected this argument because of section 38–41–111's statute of limitations and because the failure to record the patent until 1993 did not render the River Bend Mill treasurer's deed subject to attack by one having notice of the conveyances.

¶ 72 Sensible's argument that section 38–41–111 does not apply fails for the reasons discussed above. It did not challenge the River Bend Mill treasurer's deed within seven years after it was recorded.

¶ 73 Sensible's argument pertaining to the delayed recording of the 1920 Patent misconstrues the effect of the failure to record a deed. Such a failure may allow one later claiming an interest in title to assert that it was not on notice of a claim dependent on an unrecorded instrument. *See* § 38–35–109(1), C.R.S.2014. But an unrecorded deed is valid as between the parties thereto and therefore conveys title. It is not void. *See id.*; *Page v. Fees–Krey, Inc.*, 617 P.2d 1188, 1194 (Colo.1980). Thus, because Sensible does not claim any lack of notice (and could not because the 1920 Patent was recorded before Sensible purported to obtain title), its attempt to challenge Battle North's title on this basis necessarily fails.

III. Appellate Attorney Fees

¶ 74 Battle North requests an award of its appellate attorney fees pursuant to section 38–35–204(2) and C.R.C.P. 105.1(d). We grant the request in part. Both provisions require an award of attorney fees if the court determines that a document is spurious. And divisions of this court have held that where a party has successfully defended on appeal a judgment as to which attorney fees were awarded pursuant to a fee-shifting statute, that party is entitled to recover reasonable appellate attorney fees. *See, e.g., Fiscus*, ¶ 60 (awarding appellate attorney fees under § 38–35–204(2)); *Melssen v. Auto-Owners Ins. Co.*, 2012 COA 102, ¶ 75, 285 P.3d 328. We exercise our discretion to remand the case to the district court for a determination of Battle North's reasonable appellate attorney fees incurred in defending the judgment as to the quitclaim deeds. (Battle North is not entitled to an award pertaining to the 1915 Stock Certificate.)

¶ 75 We do not award fees to Sensible because it did not include a request for fees in its opening brief. *See* C.A.R. 39.5.[8]

IV. Conclusion

¶ 76 The judgment is affirmed in part and reversed in part, and the case is remanded to the district court for a determination of Battle North's reasonable appellate attorney fees incurred in defending the judgment as to the quitclaim deeds.

Casebolt and Bernard, JJ., concur

---

8. We express no opinion on whether Sensible may seek to vacate the attorney fees and costs awarded by the district court pertaining to the 1915 Stock Certificate. *See Oster v. Baack*, 2015 COA 39, ¶¶ 17–26, 351 P.3d 546.